UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-　　　　　　　　　　　　　　　　　　ORDER

CORDERRO JONES,　　　　　　　　　　　　　　19-CR-498 (CS)

             Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Corderro Jones's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release," (Docs. 26, 28, 36, 38, 39), and the Government's opposition thereto, (Doc. 41).

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community. Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the defendant has a terminal medical condition or because of serious health condition from which he is not expected to recover is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served 75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above. But "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *United States v. Brooker*,

976 F.3d 228, 237 (2d Cir. 2020). "The defendant has the burden to show he is entitled to a sentence reduction" under Section 3582(c)(1)(A). *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

On March 3, 2020, Defendant was sentenced principally to fifty-one months' imprisonment on his conviction for being a felon in possession of a firearm. (Doc. 24.) The sentence was at the low end of the applicable Sentencing Guidelines range. (Doc. 25 ("PSR") at 20.) He has served approximately twenty-two months. (*See id.* at 1.)

Defendant contends that his medical condition, combined with the dangers of the COVID-19 pandemic, justify his release. He alleges that he suffers from severe asthma, bronchitis, anxiety and bipolar depression; that his confinement prevents him from taking precautions such as social distancing, frequent hand-washing and disinfection of surfaces; and that inmates and staff at FCI Cumberland, where he is housed and which has had an outbreak, do not observe mask-wearing rules. He further reports that he was diagnosed with COVID-19 and experienced flu-like symptoms. Finally, he notes that he has somewhere to live if released.

Statistics suggest that the outbreak at FCI Cumberland has waned. According to the Department of Justice Office of Inspector General COVID-19 dashboard, that facility had a high of 221 positive inmates in mid-December. According to the Bureau of Prisons ("BOP") website, it currently has twelve positive inmates and 376 recovered inmates. Forutnately none have died, suggesting that reasonable judgments about the need for outside treatment are being made.

None of the medical conditions to which Defendant points have been identified by the Centers for Disease Control ("CDC") as putting him at increased risk for a severe case of COVID-19. The CDD has identified asthma as a factor that *might* increase risk, but only if it is moderate to severe. Apart from Defendant's claim that he has "had severe asthma all [his] life,"

(Doc. 26 at 9), there is no evidence that his condition is moderate, let alone severe. His PSR notes that he has asthma but that he has never been hospitalized and uses an inhaler as needed, (PSR ¶ 66), indicating a mild case. Defendant's BOP medical records show that he reported a history of asthma, but no current symptoms or incidents, and that he is not on any asthma medication.[1] Defendant reports having been hospitalized in 2010 and 2013 for asthma, which contradicts his PSR. But assuming it to be true, that he had acute episodes eight and eleven years ago, when he was twenty-three or twenty years old, does not suggest he suffers a moderate to severe case now at age thirty-one. In the absence of evidence of increased risk grounded in medical fact, "pointing to the mere existence COVID-19 either in a prison facility or in society generally is not enough to satisfy the 'extraordinary and compelling reasons' requirement of 18 U.S.C. § 3582(c)(1)(A)." *United States v. Davis*, No. 14-CR-296, 2020 WL 5628041, at *3 (S.D.N.Y. Sept. 21, 2020) (internal quotation marks omitted) (collecting cases) ; *see United States v. Otrosinka*, No. 12-CR-300, 2020 WL 5628060, at *4 (W.D.N.Y. Sept. 21, 2020) ("generalized fear" of contracting COVID-19 does not constitute extraordinary and compelling reason justifying release) (collecting cases).

Moreover, Defendant has now contracted COVID-19 and recovered without experiencing a severe case. According to his medical records, he was checked daily between January 20 and February 1, 2021, and each time he had no fever and his oxygen saturation was normal. He reported no symptoms except body aches on January 20 and a headache on January 23. He is regarded as recovered. Now that he has been diagnosed with the disease and weathered it, a sentence reduction based on the risk of contracting it no longer makes sense. "This Court and

---

[1] Both parties provided medical records to the Court electronically. They should each provide hard copies to chambers for filing under seal.

others have declined to find 'extraordinary and compelling circumstances' in cases where a defendant has a prior COVID-19 diagnosis." *United States v. Williams*, No. 11-CR-172, 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020); *see United States v. Mateus*, No. 14-CR-504, 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020) ("Put simply, Mr. Mateus has already contracted the COVID-19 virus and recovered from it. Other courts have denied compassionate release requests on this basis, and the Court is persuaded by their analyses."); *United States v. Rodriguez*, No. 19-CR-64, 2020 WL 4581741, at *2 (D. Conn. Aug. 10, 2020) ("A number of district courts in the Second Circuit have found an inmate's positive test undermines his case for compassionate release on the basis of his susceptibility to COVID-19 because the main point of releasing an individual is to decrease the person's chance of contracting COVID-19."). Further, reinfections are "vanishingly rare," https://www.nytimes.com/2020/10/13/health/coronavirus-reinfection.html?searchResultPosition=1, and it appears that those who have had the disease have strong protection, *see* https://www.nytimes.com/2020/11/17/health/coronavirus-immunity.html?searchResultPosition=3.

    I thus do not find the existence of extraordinary and compelling circumstances.

    Even if I did, however, those circumstances would be outweighed by the § 3553(a) factors. Defendant has a remarkable history of violence and contempt for the law. (PSR ¶¶ 28-47.) His first conviction was for criminal contempt based on his violation of an order of protection obtained by a girlfriend and for assaulting a police officer. He then was convicted for assaulting a corrections officer; bail jumping; again violating an order of protection; attempted assault on a woman; burglary; and again assaulting a woman, causing a fractured nose and four stitches to her face. He twice violated probation. Arrests for witness tampering, assault, petit

larceny, unlawful imprisonment, criminal contempt, assault and resisting arrest were all dismissed as covered by other cases. He had twenty criminal history points under the Sentencing Guidelines, which is literally off the chart. He was on probation when he committed the instant offense, which involved publicly displaying a firearm, and fleeing from and struggling with the police. He was not an impulsive youth at the time, but a grown man of twenty-nine. His home life as a child was chaotic, violent and abusive, (PSR ¶¶ 49-57), so it is perhaps no surprise that he has become a dysfunctional, angry adult, and it is to his credit that he has begun to grapple with his trauma. Those mitigating factors led me to sentence him at the low end of the Guidelines range. But reducing his sentence would undermine several of the § 3553(a) factors. It would not sufficiently account for the seriousness of the offense or Defendant's history of violence and disrespect for the law. It would not be just punishment or provide enough deterrence. It would introduce unwarranted sentencing disparity. Most importantly, it would not suffice to protect the public from further crimes by Defendant. While I sincerely hope that Defendant can turn his life around, the best predictor of the future is the past, and I would have to be naive to expect Defendant to immediately become a peaceful, law-abiding individual. In short, even if there were extraordinary and compelling circumstances, the § 3553(a) factors militate against a sentence reduction.

      For the reasons stated above, the motion is denied.

Dated: February 12, 2021
       White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.